**COLE, SCHOTZ, MEISEL,**
**FORMAN & LEONARD, P.A.**
A Professional Corporation
900 Third Avenue
New York, New York 10022
(212) 752-8000
(212) 752-8393 Facsimile
Kenneth L. Baum, Esq.
Attorneys for Kennedy Funding, Inc.

Hearing Date: February 5, 2010
at 10:00 a.m.

UNITED STATES BANKRUPTCY COURT
SOUTHERN DISTRICT OF NEW YORK

|  |  |
|---|---|
| In re: | Case No. 10-22026 (RDD) |
| EVERYDAY LOGISTICS LLC, | Chapter 11 |
| Debtor. | |

## OBJECTION OF KENNEDY FUNDING, INC. TO DEBTOR'S MOTION FOR AUTHORITY TO USE CASH COLLATERAL

TO:  THE HONORABLE ROBERT D. DRAIN
     UNITED STATES BANKRUPTCY JUDGE

Kennedy Funding, Inc. ("Kennedy"), a secured creditor of Everyday Logistics LLC, the debtor and debtor-in-possession herein (the "Debtor"), by and through its counsel, submits this objection to the Debtor's Application For Authority To Use Of Cash Collateral (the "Motion"), and respectfully shows:

### I.   PRELIMINARY STATEMENT

1.   The Debtor's inability to demonstrate how it can adequately protect Kennedy's interests, coupled with potential significant discrepancies in the revenues projected in the

Debtor's budget, compels Kennedy's objection to the Motion. While offering Kennedy only a "replacement lien," the budget, which contains no line-item detail that would allow for a meaningful analysis of the propriety of the Debtor's expenses, reflects the use of approximately $3,573,816.21 of Kennedy's cash collateral while projecting receipts of approximately $3,946,957.25. The difference, $373,141.04, is at or near ten (10%) percent of both the projected income and expenditures, leaving little margin for error. If receipts are slightly less than projected, and/or expenses are slightly higher than projected, the Debtor's cash flow will be negative, and Kennedy's collateral base will presumably be significantly eroded. This problem is particularly likely to rear its head in the first three (3) months of the six (6) month budget, where the Debtor projects an aggregate profit margin of only nine-tenths of one percent (.09%).

2. Equally troubling are the "tentative" room and food and beverage revenue projections in the budget. According to the Debtor's counsel, these figures represent additional projected reservations above and beyond actual booked reservations, based on past years' performance. Incredibly, despite a withering American labor market and economy, the Debtor sees no reason to anticipate a significant decline in these additional revenues from past years. The Debtor's willingness to disregard obvious recessionary factors ignores the fact that, if even one-half of these tenuous sources of revenue do not materialize, the Debtor, by its own projections, will operate at a **substantial loss for the entire six (6) month period**.

3. Since the beginning of this case, the Debtor has not disclosed any information regarding its cash position. At the initial hearing on the Motion, Kennedy requested, and the Court directed, that the Debtor provide weekly "flash reports" of itemized receipts and disbursements to Kennedy and the Office of the United States Trustee (the "UST") by 12:00 p.m. every Friday. That directive was memorialized in the Court's Order Authorizing Interim Use Of

Cash Collateral And Notice Of Final Hearing On Application To Use Cash Collateral (the "Interim Cash Collateral Order"). [Docket No. 16.] In the two (2) weeks since that hearing, **the Debtor has not provided any such reports**. As a result, Kennedy and all other creditors are left to speculate whether the Debtor's actual revenues and expenses for the past fifteen (15) days are consistent with the numbers projected in the Debtor's original budget submitted with the Motion. According to the updated budget, however, the Debtor has seen fit to pay E & S Management, which apparently is comprised of the Debtor's principals, Eliot Spitzer and Michael Steinberg, a prorated annual fee of **$208,000.00**.

4. The Debtor's willful disregard of the Interim Cash Collateral Order, combined with its failure to provide any perspective on its Chapter 11 strategy, is disturbing and leaves Kennedy with little confidence that the Debtor can navigate this case successfully while properly protecting the interests of Kennedy and all other creditors. Accordingly, Kennedy requests that the Court deny the Motion.

## II. FACTUAL BACKGROUND

**A.  The Loan.**

5. On or about March 8, 2006, Kennedy loaned the Debtor the principal amount of Nine Million Seven Hundred Eighty Thousand ($9,780,000.00) Dollars (the "Loan"). The term of the Loan is approximately three (3) years, commencing on March 8, 2006, and maturing February 28, 2009 (the "Maturity Date"). The Loan is evidenced and secured by, *inter alia* (i) a Loan and Security Agreement dated March 8, 2006 (the "Loan Agreement"), (ii) a Promissory Note dated March 8, 2006 (the "Note"), (iii) an Amended and Restated Mortgage, Security Agreement and Consolidation Agreement dated March 8, 2006 (the "Mortgage"), pursuant to

which Kennedy was granted a first priority lien on the Debtor's real and personal property,[1] and (iv) an Assignment of Leases and Rents dated March 8, 2006 (the "Assignment").[2] Copies of the Loan Agreement, Note, Mortgage and Assignment (collectively, the "Loan Documents") are attached hereto as **Exhibits A, B, C and D** respectively. The obligations of the Debtor under the Loan Documents were guaranteed by Eliot Spitzer and Michael Steinberg.

6. Pursuant to the Loan Agreement and Mortgage, the Debtor granted first priority liens and security interests to Kennedy in all or substantially all of its property and assets, including, without limitation, the underlying real property and all Accounts, Equipment, Inventory, General Intangibles, and the proceeds of same. Among other things, Kennedy filed UCC-1 financing statements against the Debtor to perfect its interests in the collateral provided by the Debtor.

**B.   The Foreclosure Action.**

7. The Debtor failed to pay Kennedy certain installments of interest and deposits that were payable on June 1, 2008 and dates thereafter, in accordance with the express terms of the Loan Documents. Accordingly, on or about September 12, 2008, Kennedy filed a Verified Complaint in the Supreme Court of New York, Ulster County, in an action entitled, Kennedy Funding, Inc., *et al.* v. Everyday Logistics, LLC, *et al.*, Index No. 08-4641 (the "Foreclosure Action"). Kennedy, through the Foreclosure Action, sought to foreclose its Mortgage against the Debtor's property, naming as defendants, the Debtor and other entities claiming subordinate liens against the property.

---

[1] Pursuant to the terms of a Subordination Agreement dated March 8, 2006, Minnewaska Company, L.L.C., agreed to subordinate its liens on the Debtor's property to Kennedy's liens.

[2] Nothing herein shall be deemed a waiver of Kennedy's claim that, pursuant to the Assignment, all revenues from the Debtor's operations are the property of Kennedy and not the Debtor.

8. On or about August 31, 2009, Nancy Riseley, the Referee in the Foreclosure Action, submitted a Report of Amount Due. According to Ms. Riseley, as of September 1, 2009, the Debtor owed Kennedy the sum of $13,040,001.60.[3] (A true copy of the Report of Amount Due is annexed hereto as **Exhibit E.**) As noted in the Debtor's Motion, Kennedy moved for the appointment of a receiver in the Foreclosure Action. That request was granted, although the court in that action, over Kennedy's objection, stayed the receiver's appointment until January 7, 2010. The Debtor filed its Chapter 11 petition on that same date (the "Petition Date").

**C.** **The Budget.**

9. In support of its Motion, the Debtor has provided Kennedy with a document titled, "The Hudson Valley Resort & Spa Monthly Budget – 2010" (the "Budget," a true copy of which is annexed hereto as **Exhibit F**). The Budget includes the Debtor's projections of revenues, operating, overhead, and fixed expenses, and net profits for the period February 5 through July 31, 2010 (the "Budget Period"). In short, the Debtor projects total revenues of $3,946,957.25, total expenses of $3,573,816.21, and a net profit of $373,141.04. While the Budget includes general descriptions of expenses, such as "Payroll," "Operational," and "Other," it is devoid of any meaningful line-item detail typically found in a cash collateral budget. Moreover, the Budget contains numerous alarming items, including the following:

    (a) As noted above, if the Debtor's so-called "tentative" room and food and beverage revenues do not materialize in substantial part, the Debtor, by its own projections, will operate at a loss for the entire Budget Period;

    (b) The Budget does not include a projection of the Debtor's starting and ending cash positions;

---

[3] As of the date on which the Debtor filed its Chapter 11 petition, the court in the Foreclosure Action had not yet entered a Judgment of Foreclosure and Sale.

(c) The Debtor's principals are paying themselves a prorated annual management fee of approximately $208,000.00; and

(d) The Budget does not include quarterly fees payable to the UST. Based on the projected total of $1,358,213.20 in expenses for February, March, and April 2010, the Debtor will owe the UST approximately $6,500.00 for that quarter, which will reduce the Debtor's already razor-thin margin for that period and leave it perilously close to a net operating loss even before allowing for likely adjustments in revenue.

### III. THE DEBTOR'S MOTION SHOULD BE DENIED

10. Section 363 (c)(2) of the Bankruptcy Code provides that:

> (c)(2) The trustee may not use, sell, or lease cash collateral under paragraph (1) of this subsection unless-
>
> > (A) each entity that has an interest in such cash collateral consents; or
> >
> > (b) the court, after notice and a hearing, authorizes such use, sale, or lease in accordance with the provisions of this section.

11 .U.S.C. § 363(c)(2).

11. Before a bankruptcy court may approve a debtor's request to use cash collateral, the court must conclude that a creditor with an interest in the cash collateral is being adequately protected by the debtor. Section 363(e) provides that, "[n]otwithstanding any other provision of this section, at any time, on request of an entity that has an interest in property used, sold, or leased, or proposed to be used, sold, or leased, by the trustee, the court, with or without a hearing, shall prohibit or condition such use, sale, or lease as is necessary to provide adequate protection of such interest." 11 U.S.C. § 363(e).

31392/0450-6289940v1

12. "Adequate protection" is intended to safeguard a secured creditor's constitutional right to have the value of its secured claim, as it existed on the petition date, preserved. See United Sav. Ass'n v. Timbers of Inwood Forest Assocs., 484 U.S. 365, 370 (1988). In other words, Kennedy must be assured that it will be able to recover its lien's value upon confirmation of the Debtor's plan, and such assurance must be based upon "sufficient, accurate information" provided by the Debtor. See In re O.P. Held, Inc., 74 B.R. 777, 784 (Bankr. N.D.N.Y. 1987).

13. Adequate protection, as that term is used in Section 363, is defined in Section 361 of the Bankruptcy Code. Section 361 specifies three means of providing adequate protection: (1) periodic cash payments; (2) providing additional or replacement liens; or (3) other relief that will result in the "indubitable equivalent." 11 U.S.C. § 361. A debtor has the burden of affirmatively proving that the creditor is adequately protected and the creditor must establish the validity of its interest. 11 U.S.C. § 363(p)(1) and (2). See In re Cafeteria Operators, L.P., 299 B.R. 400, 406 (N.D. Tex. 2005); see also Resolution Trust Corp. v. Swedeland Dev. Group, Inc. (In re Swedeland Dev. Group, Inc.), 16 F.3d 552, 564 (3d Cir. 1994). If adequate protection cannot be provided, a request to use cash collateral must be denied. See In re Megan-Racine Assocs. Inc., 202 B.R. 660, 663 (Bankr. N.D.N.Y. 1996).

14. Here, the Debtor does not deny that it granted Kennedy a first priority lien and security interest in substantially all of its assets. Thus, Kennedy has met its burden under Section 363(p)(2). The Debtor, however, has not, and cannot, satisfy its burden under Section 363(p)(1).

A. **The Debtor Has Not Demonstrated and Cannot Demonstrate That Kennedy's Interests are Adequately Protected.**

15. The Debtor's request to utilize cash collateral should be denied as a matter of law because it has not and cannot provide Kennedy with adequate protection.

7
31392/0450-6289940v1

16. The Debtor proposes to provide Kennedy with adequate protection in the form of a "replacement lien" on the Debtor's assets. (Motion, ¶17.) However, the Debtor does not specify the Petition Date value of its assets and fails to provide projections as to the supposed value of new assets to which the "replacement lien" will attach. In addition, the Debtor provides no explanation of whether labor costs or other overhead can be reduced.

17. In short, the Debtor fails to provide sufficient information to meet its burden that Kennedy is adequately protected. Rather, it merely asserts that Kennedy is adequately protected, and, on this basis alone, the Debtor asks the Court to force Kennedy to bear the full risk that its collateral will not be eroded, in an information vacuum. A mere assertion of adequate protection, however, is not adequate protection. See Bankwest, N.A. v. Todd, 49 B.R. 633, 638 (D.S.D. 1985) ("[I]t is plainly not enough for a Debtor to merely make predictions, write them down, and offer them as exhibits showing adequate protection."); In re Mosello, 195 B.R. 277, 292 (Bankr. S.D.N.Y. 1996) (a finding of adequate protection cannot be based upon speculation; it must be premised on facts, or on projections grounded on a firm evidentiary basis).

18. Where a debtor fails to demonstrate that it can adequately protect a creditor's interest in the cash collateral to be used, the debtor's use of such cash collateral <u>must be</u> prohibited. See In re Megan-Racine Assocs. Inc., 202 B.R. 660, 663 (Bankr. N.D.N.Y. 1996). Accordingly, the Debtor's Motion should be denied.

**B.** **The Debtor Does Not Allege That There Is An Equity Cushion to Adequately Protect Kennedy.**

19. The Debtor has not yet filed its Schedules of Assets and Liabilities. In its List Of Creditors Holding 20 Largest Unsecured Claims [Docket No. 1], however, the Debtor appears to suggest that the value of Kennedy's collateral is only $7 million. Based on that valuation, and

8

Kennedy's claim of at least $13,040,001.60 (see ¶8, *supra*), there is clearly no equity cushion to protect Kennedy's interests.

**C. The Debtor Has Not Proposed to Provide An Actual Replacement Lien To Kennedy.**

20. As noted above, the Debtor states in its Motion that it will grant Kennedy a "replacement lien" on the Debtor's assets to the extent its use of Kennedy's cash collateral results in a diminution of Kennedy's collateral. (Motion, ¶17.) Because the Debtor has not demonstrated the creation of post-petition assets that are not already subject to Kennedy's pre-petition liens, however, it is not offering a true replacement lien.

21. Section 552(b)(1) of the Bankruptcy Code states:

> (b)(1) Except as provided in sections 363, 506(c), 522, 544, 545, 547, and 548 of this title, if the debtor and an entity entered into a security agreement before the commencement of the case and if the security interest created by such security agreement extends to property of the debtor acquired before the commencement of the case and to proceeds, products, offspring, or profits of such property, then such security interest extends to such proceeds, products, offspring, or profits acquired by the estate after the commencement of the case to the extent provided by such security agreement and by applicable non-bankruptcy law, except to any extent that the court, after notice and a hearing and based on the equities of the case, orders otherwise.

22. Even if the Debtor could persuasively demonstrate that its use of cash collateral would produce a net positive cash flow, the post-petition cash generated by the use of cash collateral would already be subject to Kennedy's pre-petition lien to the extent such cash represents proceeds generated by the Debtor's pre-petition collateral. See 11 U.S.C. § 552(b)(1). Thus, any excess cash could not be considered adequate protection for the cash collateral used. As previously noted, Kennedy has security interests in all or substantially all of the Debtor's assets, which includes, among other things, the Debtor's Accounts and all proceeds therefrom. Section 552(b)(1) of the Bankruptcy Code provides that a pre-petition security interest extends to

9

proceeds of pre-petition property acquired by the estate after the commencement of the case if the secured creditor has a validly-perfected pre-petition security interest in a debtor's pre-petition property and in the proceeds such property.  See 11 U.S.C. § 552(b)(1).  Therefore, granting Kennedy a replacement lien on property that is already subject to its pre-petition lien does not constitute adequate protection.  See Swedeland, 16 F.3d at 565 ("a continuing lien and security interest in and to all future sales proceeds and all other assets" did not adequately protect a secured creditor who already had a lien on such assets).

23. The Debtor is granting Kennedy a "replacement lien" in nothing because it has not demonstrated the creation of any new collateral.  Accordingly, the Debtor's use of cash collateral will cause Kennedy's position to deteriorate with no resulting protection to Kennedy.

**D.     The Debtor Proposes To Pay Kennedy Nothing.**

24. The other accepted means of adequate protection is payment to the secured creditor.  However, nowhere in the Debtor's Motion is there any proposed payment of any kind to Kennedy.  Instead, the Debtor appears prepared only to pay payroll, a prorated annual management fee of $208,000.00 to the Debtor's principals, and selected unspecified vendors for post-petition operations with questionable projected profitability, which will further erode the value of Kennedy's lien in the absence of real proof of the creation of new replacement collateral.

**E.     The Debtor Has Not Satisfactorily Explained Its Income and
        Expenditures, Thus Preventing the Court From Granting the
        Debtor's Request to Use Cash Collateral.**

25. As noted above, the Budget includes only general descriptions of the Debtor's operating expenses, thus making it impossible for creditors to meaningfully analyze the propriety of those expenses and determine whether any could or should be reduced.  Moreover, the Debtor's projected thin operating margins are premised in large part on realizing "tentative"

10

revenues over and above actual reservations, notwithstanding the current state of the American economy and its impact on numerous industries, including the hospitality industry. These deficiencies, combined with the proposed payment of a $208,000.00 prorated annual management fee to the Debtor's principals, leaves Kennedy with no confidence that the Debtor can or will adequately protect Kennedy's interests.

26. Once a Chapter 11 is filed and a debtor remains in possession, it is no longer business as usual for the debtor. A debtor must alter its spending habits to protect the estate and to fulfill the requirements of the Bankruptcy Code. The Debtor should not make ordinary course payments with Kennedy's cash collateral until it can establish a business justification, which is clearly lacking from the skeletal Motion.

27. It is therefore clear that the Debtor cannot adequately protect Kennedy's interests as required by the Bankruptcy Code. As noted above, "[t]he purpose of providing 'adequate protection' is to insure that a secured creditor receives in value essentially what he bargained for." In re Timbers of Inwood Forest Associates, Ltd., 808 F.2d 363, 377 (5th Cir. 1987), aff'd, 484 U.S. 365 (1988) (citing H.R. Rep. No. 599 at 339, 1978 U.S. Code Cong. & Ad. News at 5787, 6295); see also Sharon Steel Corp. v. Citibank (In re Sharon Steel Corp.), 159 B.R. 165, 169 (Bankr. W.D. Pa. 1993) (citations omitted). Kennedy will not receive what it bargained for when it entered into the Loan Documents if the Court permits the Debtor to use Kennedy's cash collateral as the Motion proposes.

28. As is evident from all of these deficiencies, the Debtor's use of Kennedy's cash collateral will not fit within the dictates of the Bankruptcy Code. Because Kennedy does not consent to the use of its cash collateral and the Debtor has not, and cannot, satisfy its burden to provide Kennedy with adequate protection, the Debtor cannot use Kennedy's cash collateral.

11

29. Accordingly, Kennedy requests that the Court order the collection, deposit and segregation of any cash collateral presently in the possession and/or control of the Debtor and hereinafter coming into the possession and/or control of the Debtor from any source whatsoever. Such collection and segregation of cash collateral is mandated by section 363(c)(4) of Bankruptcy Code, which requires a debtor-in-possession to segregate any cash collateral in its possession, custody or control. <u>See</u> 11 U.S.C. § 363(c)(4).

WHEREFORE, for the foregoing reasons, Kennedy respectfully requests that the Court enter an order (i) denying the relief sought by the Debtor in the Motion; (ii) prohibiting the Debtor from using or dissipating any cash collateral held in its possession or in any account in any financial institution without the written permission of Kennedy; (iii) directing the Debtor to immediately turn over to Kennedy that portion of the collateral constituting cash collateral within the meaning of Section 363 of Bankruptcy Code that is in the Debtor's possession or in any accounts at any financial institutions or otherwise under the Debtor's control; (iv) directing the Debtor to segregate and account for any and all cash collateral presently in its possession and/or control, or hereafter received by the Debtor, or any entity under the Debtor's control, from any source whatsoever, and to turn over to Kennedy any additional cash collateral as collected and segregated; and (e) granting all other just and proper relief.

Dated: New York, New York
       February 3, 2010

> COLE, SCHOTZ, MEISEL,
> FORMAN & LEONARD, P.A.
> Attorneys for Kennedy Funding, Inc.
>
> By: */s/ Kenneth L. Baum*
> Kenneth L. Baum (KB-2492)
> 900 Third Avenue
> New York, NY 10022
> (212) 752-8000
> (212) 752-8393 (facsimile)
> kbaum@coleschotz.com