UNITED STATES BANKRUPTCY COURT
SOUTHERN DISTRICT OF NEW YORK
-------------------------------------------------------------x
In re                                                                 Chapter 11

EVERYDAY LOGISTICS LLC,                        Case No. 10-22026

                        Debtor.
-------------------------------------------------------------x

# DEBTOR'S PLAN OF REORGANIZATION

**BACKENROTH, FRANKEL & KRINSKY, LLP**
489 5th Avenue
New York, New York  10017
(212) 593-1100
Counsel to the Debtor-in-Possession

## <u>INTRODUCTION</u>

Everyday Logistics, LLC ("<u>Debtor</u>"), proposes this Plan of Reorganization for the Debtor.  **UPON CONFIRMATION, THIS PLAN SHALL BE A BINDING OBLIGATION BETWEEN AND AMONG THE DEBTOR, EACH OF THE DEBTOR'S CREDITORS, AND THE INTEREST HOLDERS (AS ALL SUCH TERMS ARE DEFINED BELOW)**.

## ARTICLE 1

## <u>DEFINITIONS</u>

As used in this Plan, the following terms will have the meanings hereinafter set forth:

1.1     **"<u>Administrative Expense</u>"** Any cost or expense of administration of the Bankruptcy Case entitled to priority under section 507(a)(1) and allowed under section 503(b) of the Bankruptcy Code, and any fees or charges assessed against the Debtor's Estate under Chapter 123, Title 28, United States Code.

1.2     **"<u>Administrative Expense Claim</u>"**  A claim for payment of an Administrative Expense.

1.3     **"<u>Allowance Date</u>"** shall mean the date which a Disputed Claim becomes an Allowed Claim by Final Order.

1.4      **"Allowed Claim"** shall mean a Claim against the Debtor: (a) to the extent that a Proof of Claim is filed timely or, with leave of the Court late filed as to which (i) no party in interest files an objection or (ii) which is allowed by a Final Order; or (b) which is listed on the Debtor's schedules or any amendments thereto but which is not listed therein as disputed, unliquidated or contingent.

1.5      **"Allowed Secured Claim"** shall mean an Allowed Claim for which a Claimant asserts and is determined by a Final Order to hold a valid, perfected and enforceable Lien, security interest or other interest or encumbrance in property in which the Debtor has an interest not subject to avoidance or subordination under the Bankruptcy Code or applicable non-bankruptcy law, or an Allowed Claim for which a Claimant asserts a setoff under Section 553 of the Bankruptcy Code and such Claim is allowed by Final Order, but in any event only to the extent of the value, determined in accordance with section 506(a) of the Bankruptcy Code, of the Claimant's interest in the Debtor's interest in the property or to the extent of the amount subject to such setoff, as the case may be.

1.6      **"Allowed Unsecured Claim"** shall mean an Unsecured Claim to the extent same is allowed.

1.7      **"Bankruptcy Case"** shall mean this Chapter 11 bankruptcy case of the Debtor.

3

1.8    **"Bankruptcy Code"** shall mean Title 11 of the United States Code (11.

U.S.C. § 101 et. seq.), as in effect on the Petition Date and as amended during the Bankruptcy

Case.

1.9    **"Bankruptcy Court"** shall mean the Court as defined below.

1.10    **"Cash"** shall mean all cash and cash equivalents which evidence

immediately available funds in United States dollars.

1.11    **"Claim"** shall mean a right to payment as set forth in § 101(5) of the

Bankruptcy Code.

1.12    **"Claimant"** shall mean the holder of a Claim.

1.13    **"Confirmation Date"** shall mean the date of the entry of the

Confirmation Order.

1.14    **"Confirmation Hearing"** shall mean the hearing pursuant to the

Bankruptcy Code Section 1128 before the Bankruptcy Court regarding the proposed

confirmation of the Plan.

1.15     **<u>"Confirmation Order"</u>** shall mean the order of the Court confirming the

Plan.

1.16     **<u>"Court"</u>** shall mean the United States Bankruptcy Court for the Southern

District of New York.

1.17     **<u>"Creditor"</u>** shall mean any entity that holds a claim against the Debtor.

1.18     **<u>"Debtor"</u>** shall mean Everyday Logistics, LLC.

1.19     **<u>"Development Entity"</u>** shall mean an entity to be formed to take title to

the Debtor's undeveloped land (which includes an undeveloped portion of the Golf Course lot),

as designated on Exhibit __ hereto, including the improvements thereon, and all personal

property incidental to such land.

1.20     **<u>"Disputed Claim"</u>** shall mean the whole or any portion of any claim

against the Debtor to which an objection is timely filed as to which a Final Order has not been

entered allowing or disallowing such Claim or any portion thereof.

1.21     **<u>"Effective Date"</u>** shall mean no later than the Date upon which the

Confirmation Order is a Final Order.

1.22    **"Estate"** shall mean the estate of the Debtor created upon the

commencement of the Bankruptcy Case pursuant to Section 541 of the Bankruptcy Code.

1.23    **"Executory Contracts"** shall mean "executory contracts" and "unexpired

leases" as such terms are used within Section 365 of the Bankruptcy Code.

1.24    **"Final Order"** shall mean an order of the Court that has not been

reversed, modified, amended or stayed, and as to which the time to appeal or to seek review or

certiorari thereof has expired, and as to which no appeal, review or rehearing is pending.

1.25    **"Golf Course"** shall mean that certain real property designated on Exhibit

__ hereto, including the improvements thereon, and all personal property incidental to the

operation of the Debtor's golf course business.

1.26    **"Golf Course Entity"** shall mean an entity to be formed to take title to

the Golf Course under the Plan.

1.27    **"Hotel"** shall mean that certain real property designated on Exhibit __

hereto, including the improvements thereon, and all personal property incidental to the operation

of the Debtor's hotel business.

6

1.28    **<u>Hotel Entity</u>** shall mean an entity to be formed to take title to the Hotel under the Plan.

1.29    **<u>Interest</u>** shall mean an existing ownership interest in Debtor.

1.30    **<u>Interest Holder</u>** shall mean a holder and owner of an existing Interest in Debtor.

1.31    **<u>Investor Entity</u>** shall mean an entity to be created to take post-confirmation ownership of the Hotel Entity, the Golf Course Entity and the Development Entity.

1.32    **<u>Legal Rate</u>** shall mean the applicable interest rate as set forth in 28 U.S.C. §1961 as of the Confirmation Hearing.

1.33    **<u>Lien</u>** shall mean a charge against or interest in property to secure payment of a debt or performance of an obligation.

1.34    **<u>Petition Date</u>** shall mean January 7, 2010, the date of the filing of the Bankruptcy Case by the Debtor.

1.35    **<u>Plan</u>** shall mean this Plan of Reorganization, and any and all modifications and/or amendments hereto.

1.36    **<u>Secured Claim</u>** shall mean a Claim secured by a Lien on property included within the Debtor's Estate.

1.37    **<u>Secured Creditor</u>** shall mean the owner or holder of a Secured Claim.

1.38    **<u>Unsecured Claim</u>** shall mean a claim for which the Claimant does not hold (a) a valid, perfected and enforceable Lien, security interest or other interest in or encumbrance against property of the Debtor or the Debtor's Estate; (b) a right to setoff to secure the payment of such Claim.  An Unsecured Claim  includes, but is not limited to, a Claim for damages resulting from rejection of any Executory Contract pursuant to Section 365 of the Bankruptcy Code.

1.39    **<u>Unsecured Creditor</u>** shall mean the owner or holder of an Unsecured Claim.

## ARTICLE 2

## <u>CLASSIFICATION AND TREATMENT OF CLAIMS</u>

### <u>Class 1: Kennedy Funding</u>

2.1    **<u>Classification</u>** -  Class 1 consists of the Secured Claim held by Kennedy Funding, the first mortgagee.

2.2    **Treatment** - The Class 1 Claim shall be paid as follows:

(a)        a Cash payment of $2,575,000 will be made on the Effective

Date; and

(b)        a 5-year amortized Note and Mortgage in the estimated
principal amount

(the "Principal Amount") of $9,620,000 substantially in the form annexed to the Plan as Exhibit A. The actual Principal Amount of such Note and Mortgage shall be calculated by starting with a base amount of $9,500,000 which shall be increased by accrued unpaid Chapter 11 adequate protection payments which are estimated to be $40,000 per month commencing December 2010 through closing. The payment terms of the Note shall be as follows:

Year 1: monthly interest only payments at the rate of 5% of the Principal Amount commencing on the first day of the first month following the Effective Date;

Year 2: monthly interest only payments at the rate of 6% interest on the Principal Amount commencing on the first anniversary of the first payment due under the Note and continuing each month for the eleven month period thereafter;

Year 3:  monthly interest only payments at the rate of 7% interest on the Principal Amount commencing on the second anniversary of the first payment due under the Note and continuing each month for the eleven month period thereafter;

Year 4:  monthly interest only payments at the rate of 8% interest on the Principal Amount commencing on the third anniversary of the first payment due under the Note and continuing each month for the eleven month period thereafter; and

Year 5:   monthly interest only payments at the rate of 9% interest on the Principal Amount commencing on the fourth anniversary of the first payment due under the Note and continuing each month for the eleven month period thereafter.

On the fifth anniversary of the first payment due under the Note, the Debtor shall be obligated to pay the Principal Amount. On such date, and provided that there was no uncured monetary default, the Class 1 Claimant shall forgive $2,000,000 of the Principal Amount.

The Mortgage with respect to the Debtor's obligations under the Note will encumber the Hotel Property, the Golf Course, and the Development Property, and shall expressly provide that during the course of the loan, the Investor Entity shall have the right, so long as payments are current, to pay down $2,000,000.00 of the Principal Amount and, upon such payment, Kennedy shall release any liens or claims that it may have on or with regard to the Development Property and the Development Entity.

(c)     The Class 1 Claimant shall waive distribution on its Class 2 General Unsecured Claim, but not its right to vote as a Class 2 Claimant.

2.3   **Voting** –  The holder of the Class 1 Claim is impaired and is entitled to vote to accept or reject the Plan.

## **Class 2: Unsecured Claims**

2.4      **Classification** - Class 2  consists of Allowed Unsecured Claims.

2.5      **Treatment** – Each holder of an Allowed Class 2 Claim shall be entitled to receive an annual distribution equal to its pro-rata share of 50% of the net profits from the operations of the Development Entity for the preceding year until such Allowed Claim is fully paid, but without interest thereon.  For purposes of the Plan, "net profit" shall be defined as the sum remaining after payment of all operating and ongoing expenses of the Development Entity; wages, salaries, workers compensation and unemployment insurance premiums, and employee insurance benefits expenses; all federal, state and local taxes, including income, withholding, payroll, franchise, property and sales taxes; installment payments on amounts owed to secured lenders or other ongoing payments under the Plan.

10

2.6    **<u>Voting</u>** –  Class 2 is impaired and is entitled to vote accept or reject the

Plan.

### **<u>Class 3: Interest Holders</u>**

2.7    **<u>Classification</u>** – Class 3 consists of the Debtor's members.

2.8    **<u>Treatment</u>** -- The Class 3 Interest Holders shall be entitled to no

distribution under the Plan, and their Interests shall be cancelled.

2.9    **<u>Voting</u>** –  The Holders of Class 3 Equity Interests are deemed to have

rejected the Plan, under 1126(g) of the Bankruptcy Code.

### **ARTICLE 3**

### **<u>ADMINISTRATIVE EXPENSES AND PRIORITY CLAIMS</u>**

3.1    Allowed Administrative Expenses shall be paid in full, in Cash on the

Effective Date, or the date such Administrative Expense becomes Allowed, except to the extent

that the holder of an Allowed Administrative Expense agrees to a different treatment; <u>provided</u>,

<u>however</u>, that Allowed Administrative Expenses representing obligations incurred in the

ordinary course of business or assumed by the Debtor shall be paid in full or performed by the

Debtor in the ordinary course of business or pursuant to the terms and conditions of the

particular transaction.

3.2     Allowed Priority Claims, including all Claims under Sections 507(a)(2),

(3),(4),(5),(6),(7),and (8) of the Bankruptcy Code,  shall be paid in full in Cash on the Effective

Date.  The Debtor estimates that the Allowed Priority Claims total approximately $1,200 on

account of claims made by the State of New York and the United States Internal Revenue

Service.

# ARTICLE 4

## MEANS FOR IMPLEMENTATION OF THE PLAN

4.1     On the Effective Date of the Plan, the Debtor shall transfer its property

into three new entities: the Hotel Entity, the Golf Course Entity, and the Development Entity.

The Debtor's Hotel and its associated personal property will be transferred to the Hotel Entity,

the Debtor's Golf Course and its associated personal property will be transferred to the Golf

Course Entity, and the Debtor's undeveloped land shall be transferred to the Development

Entity.

4.2     The Plan shall be funded by a new investor (the "Investor Entity").  On

the Effective Date, the Investor Entity shall transfer sufficient funds to the Debtor to pay the

initial $2,500,000 amount due to the Class 1 Claimant on the Effective Date, plus such other

amounts as may be due on the Effective Date to pay Administration Claims, and Priority Claims. In exchange for its Effective Date payment, the Investor Entity shall be entitled to all of the membership interests in the Hotel Entity, the Golf Course Entity and the Development Entity.

4.3     The funds to be distributed under the Plan on the Effective Date shall be held in an IOLA account maintained by Backenroth Frankel & Krinsky, LLP.  The Debtor shall be the disbursing agent under the Plan.

4.4     **Filing of Documents.**  Each and every federal, state and local governmental agency or department shall be authorized to accept and record any and all documents and instruments necessary, useful or appropriate to effectuate, implement and consummate the transaction contemplated by the Plan, including, but not limited to any and all notices of satisfaction, release or discharge of any Lien, Claim or encumbrance not expressly preserved by the Plan, and/or the Confirmation Order.

4.5     **11 U.S.C. 1146**.  Under the Plan, pursuant to Bankruptcy Code § 1146(a) the issuance, transfer or exchange of any securities, instruments or documents, (b) the creation of any other Lien, mortgage, deed of trust or other security interest, (c) the making or assignment of any lease or sublease or the making or delivery of any deed or other instrument of transfer under, pursuant to, in furtherance of, or in connection with, the Plan, including, without limitation, any deeds, bills of sale or assignments executed in connection with the purchase of the Assets by Acquisition and any other transaction contemplated under the Plan or the re-

13

vesting, transfer or sale of any real or personal property of the Debtor pursuant to, in

implementation of, or as contemplated in the Plan, and (d) the issuance, renewal, modification or

securing of indebtedness by such means, and the making, delivery or recording of any deed or

other instrument of transfer under, in furtherance of, or in connection with, the Plan. Consistent

with the foregoing, and the Supreme Court interpretation of the Bankruptcy Code § 1146(a)

exemption, each recorder of deeds or similar official for any county, city or governmental unit in

which any instrument hereunder is to be recorded, any instrument of transfer of the title to the

Property, pursuant to the Confirmation Order, shall accept such instrument, without requiring the

payment of any filing fees, documentary stamp tax, deed stamps, stamp tax, transfer tax,

mortgage tax, intangible tax or similar tax, including without limitation New York State

Documentary Tax.


## ARTICLE 5

### PROVISIONS FOR THE RETENTION, ENFORCEMENT AND SETTLEMENT OF CLAIMS BELONGING TO THE DEBTOR OR THE DEBTOR'S ESTATE

5.1    All rights pursuant to Sections 502, 544, 545 and 546 of the Bankruptcy

Code, all preference claims pursuant to Section 547 of the Bankruptcy Code, all fraudulent

transfer claim pursuant to Section 548 of the Bankruptcy Code, and all claims relating to post-

petition transactions under Section 549 of the Bankruptcy Code are hereby preserved for the

benefit of the Debtor.  Prosecution and settlement of such Claims shall be the exclusive

responsibility of Debtor and all proceeds from such actions shall vest in and be the property of

the Debtor.

# ARTICLE 6

## PROVISIONS FOR THE RESOLUTION OF DISPUTED
 CLAIMS AND OBJECTIONS TO PROOFS OF CLAIM

6.1     **Objections to Claims**.  The Debtor may object, on appropriate grounds,
to the allowance of any Claim up to one hundred twenty (120) days following the Effective Date
of the Plan subject to extension by Order of the Bankruptcy Court.  Unless otherwise ordered by
the Bankruptcy Court, the Debtor reserves the exclusive right to, and shall object to the
allowance of, Claims listed in the Debtor's schedules or filed with the Bankruptcy Court with
respect to which it disputes liability in whole or in part.  All objections shall be litigated to Final
Order. The Plan reserves the right of the Debtor to compromise, settle, withdraw or resolve by
any other method approved by the Bankruptcy Court, any such objections to Claims.

6.2     The Debtor may, at any time, request that the Bankruptcy Court estimate
any contingent or unliquidated Claim pursuant to §502(c) of the Bankruptcy Code regardless of
whether the Debtor previously objected to such Claim or whether the Bankruptcy Court has
ruled on any such objection. The Bankruptcy Court shall retain jurisdiction to estimate any such
contingent or unliquidated Claim at any time during litigation concerning any objection to any
Claim, including during the pendency of any appeal relating to any such objection.  All of the
aforementioned claim objection, estimation and resolution procedures are cumulative and are not
necessarily exclusive of one another. Claims may be estimated and thereafter resolved by any
permitted method.

6.3    <u>Distribution on Disputed Claims</u>.  No distribution shall be made with respect to a Disputed Claim until the resolution of such dispute by Final Order or by compromise, settlement, withdrawal or resolution by any other method approved by the Bankruptcy Court thereby becoming an Allowed Claim.  As soon as practicable after a Disputed Claim becomes an Allowed Claim, the holder of such Allowed Claim shall receive all payments and/or distributions to which such holder is then entitled under the Plan.

6.4    <u>Reserve for Disputed Claims</u>.  If Disputed Claims exist as of the Effective Date, the Debtor shall hold for the benefit of each holder of a Disputed Claim, cash in amount equal to the distributions which would have been made to the holder of such Disputed Claim if it were an Allowed Claim as of the Effective Date in an amount equal to the lesser of: (i) the amount listed in the schedules; (ii) the amount filed with the Bankruptcy Court; or (iii) the amount as estimated by the Bankruptcy Court pursuant to §502(c) of the Bankruptcy Code.

## ARTICLE 7

## <u>EXECUTORY CONTRACTS AND UNEXPIRED LEASES</u>

7.1    **<u>Assumption</u>**.  At least 10 days prior to the Confirmation Hearing, the Debtor shall designate those executory contracts and unexpired leases that the Debtor shall assume and assign to the appropriate post-confirmation successor entity under the Plan.   Such designation shall be made by the filing of a notice in the docket of this case and by service by

16

overnight delivery to the counterparties to such agreements.  All unexpired leases and executory contracts not so designated shall be deemed rejected under the Plan.

7.2     **Claims Upon Rejection**.  In the event of a rejection of any Executory Contract which results in damage to the other party or parties to the Executory Contract, a Proof of Claim for such damages must be filed by the damaged party with the Court within sixty (60) days after the Effective Date.  All Allowed Claims arising from the rejection of any Executory Contract shall be treated as a General Unsecured Claim.

7.3     **Failure to File**.  Any Claim arising from the rejection of any Executory Contract not filed with the Court within the time period provided in the preceding paragraph above shall be deemed discharged and shall not be entitled to participate in any distribution under the Plan.

## ARTICLE 8

## RETENTION OF JURISDICTION

8.1     **Retention of Jurisdiction**.  The Court shall have jurisdiction over all matters arising under, arising in, or relating to Debtor Bankruptcy Case including, but not limited to, proceedings:

8.1.1     To consider any modification of the Plan under section 1127 of the Bankruptcy Code;

17

8.1.2       To hear and determine all Claims, controversies, suits and disputes against the Debtor to the full extent permitted under 18 U.S.C. §1334 and 28 U.S.C. §157.

8.1.3       To hear, determine and enforce all Claims  and causes of action which may exist on behalf of the Debtor or the Debtor's estate, including, but not limited to, any right of the Debtor or the Debtor's Estate to recover assets pursuant to the provisions of the Bankruptcy Code;

8.1.4       To hear and determine all requests for compensation and/or reimbursement of expenses which may be made;

8.1.5       To value assets of the Estate.

8.1.6       To enforce the Confirmation Order, the final decree, and all injunctions therein;

8.1.7       To enter an order concluding and terminating the Bankruptcy Case;

8.1.8       To correct any defect, cure any omission, or reconcile any inconsistency in the Plan, or the Confirmation Order;

8.1.9       To determine all questions and disputes regarding title to the assets of the Debtor.

8.1.10       To re-examine Claims which may have been allowed for purposes of voting, and to determine objections which may be filed to any Claims;

18

# ARTICLE 9

## GENERAL PROVISIONS

9.1 **Headings**. The headings in the Plan are for convenience of reference only and shall not limit or otherwise affect the meaning of the Plan.

9.2 **Contents of Confirmation Order**. The Confirmation Order may contain such injunctions and other orders as may be necessary to implement the Plan.

9.3 **No Payment of Disputed Claims**. This Plan contemplates the payment of Allowed Claims only. No Disputed Claims shall be paid, nor shall distributions be made to a creditor holding a Disputed Claim, until such Claim, or any part thereof, becomes an Allowed Claim, if ever.

9.4 **Discharge of Claims not Classified**. Any Claim not specifically classified within this Plan shall not receive distributions under the Plan on account of such Claim, and shall be deemed discharged and forever barred.

9.5 **Calculation of Time Periods**. Bankruptcy Rule 9006 is incorporated herein for purposes of calculating the dates set forth herein.

9.6     **Other Actions**.  Nothing contained herein shall prevent the Debtor,

Interest Holders, or Creditors from taking such actions as may be necessary to consummate the

Plan, although such actions may not specifically be provided for within the Plan.


# ARTICLE 10

## MODIFICATIONS


10.1    **Modification of Plan.**  The Debtor may seek amendments or

modifications to the Plan in accordance with section 1127 of the Bankruptcy Code at any time

prior to the Confirmation Date.  After the Confirmation Date, the Debtor may seek to remedy

any defect or omission or reconcile any inconsistencies in the Plan or in the Confirmation Order,

in such manner as may be necessary to carry out the purposes and intent of the Plan.


# ARTICLE 11

## INJUNCTION, DISCHARGE AND PROPERTY OF THE ESTATE


11.1    **Discharge**.  The confirmation of this Plan shall discharge the Debtor from

any Claim that accrued or arose on or before the Confirmation Date pursuant to 11 U.S.C.

§1141(d)(1).


11.2 **Vesting of Property**.  Except as otherwise provided in the Plan, on the

Effective Date title to all of the Debtor's assets shall pass to the Debtor or its designee, solely for

purposes of making distributions to Creditors hereunder, free and clear of all Claims and

Interests, in accordance with Section 1141 of the Bankruptcy Code.

## ARTICLE 12

## <u>CLOSING THE CASE</u>

12.1    Upon substantial consummation, the Debtor may move for a final decree

to close the Bankruptcy Case and to request such other orders as may be just.

Dated:    New York, New York
          January 18, 2011

                                    **Everyday Logistics, LLC, by Hotel K LLC,
                                    its Managing Member**

                      By:           <u>s/Eliot Spitzer, Managing Member</u>

                                    **BACKENROTH FRANKEL & KRINSKY,
                                    LLP**, **Attorneys for the Debtor**

                      By:           <u>s/Mark Frankel                    </u>
                                    Mark A. Frankel
                                    489 Fifth Avenue
                                    New York, New York 10017
                                    (212) 593-1100